# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PEERLESS INDEMNITY INSURANCE      )
COMPANY, et al.,                  )
                                  )
                Plaintiffs,       )
                                  )
        v.                        )      1:13CV1104
                                  )
CITY OF GREENSBORO,               )
                                  )
                Defendant.        )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned Magistrate Judge for a recommended ruling on Defendant's Motion for Summary Judgment (Docket Entry 33). For the reasons that follow, the Court should grant Defendant's instant Motion.

### FACTUAL BACKGROUND

On February 7, 2014, Plaintiffs (the insurers and subrogees of the underlying property owners) filed their Amended Complaint against Defendant. (Docket Entry 13.) Plaintiffs allege that Defendant negligently failed to repair a water main, thereby allowing a subsequent fire to damage their insured's personal and real property. (Id., ¶¶ 10, 12, 13.) Defendant argues that governmental immunity shields it from liability. (Docket Entry 27 at 3.) After engaging in limited discovery on the issue of governmental immunity, Defendant filed the instant Motion. (Docket Entry 33.)

The facts in the light most favorable to Plaintiffs reveal[1] that, on November 28, 2012, employees of Southeast Church Furniture, Inc. reported a water main leak located outside of their building (the "Building"). (See Docket Entry 34-2 at 14-15; Docket Entry 34-4 at 2; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2.) Both the local fire department and the water department responded to the scene. (See Docket Entry 34-2 at 14-15; Docket Entry 34-4 at 2; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2.) In surveying the scene, the firefighters noticed a water valve near the leak - which they later realized, after the fire, controlled the fire suppression line leading to the Building's fire suppression sprinklers - and unsuccessfully attempted to close it. (Docket Entry 34-4 at 2, 3; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2.) A water department employee subsequently closed the valve. (Docket Entry 34-4 at 3; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2; Docket Entry 35-9 at 4.) Unfortunately, that action did not stop the leak. (Docket Entry 34-4 at 3; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2; Docket Entry 35-10 at 5.) Shortly thereafter, additional water department employees arrived to combat the water

---

[1] In evaluating a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc).

2

main leak and the fire department left.  (Docket Entry 34-4 at 3; Docket Entry 35-3 at 2; Docket Entry 35-5 at 2; Docket Entry 35-6 at 2.)    Eventually, the water department employees stopped the water main leak.  (Docket Entry 34-2 at 13-15.)  However, no one re-opened the water valve on the fire suppression line.  (Docket Entry 35-13 at 7-8.)

On January 11, 2013, a fire occurred in a spray paint booth of the Building.  (Docket Entry 13, ¶ 12; Docket Entry 27, ¶ 12.) The Building's fire suppression sprinklers failed to activate because the water valve on the fire suppression line remained closed.  (Docket Entry 35-13 at 7-8.)  The fire spread, causing several hundred thousand dollars worth of damage before the fire department could contain the fire.  (Docket Entry 13, ¶¶ 17, 19; Docket Entry 27, ¶¶ 17, 19.)  Ultimately, Plaintiff Peerless paid Right Touch Interiors (the lessor of the Building) over three hundred thousand dollars for the loss of its real property. (Docket Entry 13, ¶ 17; Docket Entry 27, ¶ 17.)   Plaintiff Excelsior paid Southeast Church Furniture, Inc. (the lessee of the Building) over five hundred thousand dollars for the loss of its personal property. (Docket Entry 13, ¶ 19; Docket Entry 27, ¶ 19.)

Water service to the Building arrives from two service lines branched off from the main water line, the domestic line and the fire suppression line.  (Docket Entry 16-2, ¶¶ 3-6; Docket Entry 34-2 at 13-14.)   The service line at issue here, the fire

3

suppression line, runs from the main line to the Building's fire suppression sprinklers. (Docket Entry 16-2, ¶¶ 4, 6; Docket Entry 34-2 at 13-14.) Defendant does not meter or charge for the use of water from the fire suppression line; nor did Defendant charge a fee for installing the fire suppression line. (Docket Entry 16-2, ¶ 6; Docket Entry 34-2 at 13-14.)

## LEGAL BACKGROUND

The Court should grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party then must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248.

4

## ANALYSIS

Plaintiffs have filed a single claim of negligence against Defendant. (Docket Entry 13, ¶¶ 23-27.) As a federal court sitting in diversity, this Court must apply the state law where it sits. See Burris Chemical, Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993). Negligence, under North Carolina law, requires "(i) a legal duty, (ii) a breach thereof, and (iii) injury proximately caused by such breach." Hunt v. North Carolina Dep't of Labor, 348 N.C. 192, 195, 499 S.E.2d 747, 749 (1998). Defendant has asserted the affirmative defense of governmental immunity. (Docket Entry 27 at 3.) Governmental immunity provides that a "municipal corporation 'is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.'" Estate of Williams v. Pasquotank Cnty. Parks & Rec. Dep't, 366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012) (quoting Evans ex rel. Horton v. Housing Auth., 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004)).

"Nevertheless, governmental immunity is not without limit. '[G]overnmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.'" Id. at 199, 732 S.E.2d at 141 (quoting Evans 359 N.C. at 53, 602 S.E.2d at 670) (emphasis omitted). Thus, governmental immunity does not cover municipalities when they engage in proprietary functions. See Town of Grimesland v. City of

5

Washington, 234 N.C. 117, 123, 66 S.E.2d 794, 798 (1951) ("[W]hen a municipal corporation undertakes functions beyond its governmental and police powers and engages in business in order to render a public service for the benefit of the community for a profit, it becomes subject to liability for contract and in tort as in case of private corporations.").

North Carolina courts consistently have held that municipalities engaged in the selling of water act in a proprietary fashion, see e.g., Bowling v. City of Oxford, 267 N.C. 552, 557, 148 S.E.2d 624, 628 (1966) ("When a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage to the property of others to the same extent and upon the same basis as a privately owned water company would be."), and that, when "a municipality undertakes to supply water to extinguish fires, or for some other public purpose, it acts in a governmental capacity, and cannot be held liable for negligence," Faw v. Town of North Wilkesboro, 253 N.C. 406, 409-10, 117 S.E.2d 14, 17 (1960). However, because the North Carolina Supreme Court recently "restate[d] [its] jurisprudence of governmental immunity," Estate of Williams, 366 N.C. at 196, 732 S.E.2d at 139, a question arises regarding the continued force of Bowling and Faw.

6

Under Estate of Williams, the availability of governmental immunity depends on "whether the alleged tortious conduct of the county or municipality arose from an activity that was governmental or proprietary in nature." Id., at 199, 732 S.E.2d at 141. To determine whether an activity qualifies as governmental or proprietary, North Carolina law employs a three-step test. Bynum v. Wilson Cnty., 367 N.C. 355, 358-59, 758 S.E.2d 643, 646 (2014). First, the court must evaluate whether the North Carolina legislature has designated the particular activity as governmental or proprietary. Id. at 358, 758 S.E.2d at 646. Second, if the legislature has not addressed the issue, then an activity qualifies as necessarily governmental if only the government or its agency can complete the activity. Id. at 358-59, 758 S.E.2d at 646. Finally, if both private companies and governmental entities can perform the relevant activity, then the court must consider several factors, including: whether governmental entities traditionally provide the service; whether the government charges a substantial fee for the service; and whether the fee exceeds the operating costs. Id. at 359, 758 S.E.2d at 646.

The Parties initially dispute the relevant activity for purposes of determining governmental immunity. (Compare Docket Entry 34 at 13 (focusing on provision of water for fire suppression services), with Docket Entry 35 at 6 (referencing negligent repair to the water distribution system).) Defendant contends that its

7

failure to provide water for fire suppression purposes constitutes the relevant activity. (Docket Entry 34 at 13.) Defendant argues that Plaintiffs' negligence claim exists because Defendant failed to provide water for fire suppression services, i.e., if Defendant had provided water for the Building's fire suppression sprinklers, then the water would have contained the fire and no injury to Plaintiffs would have occurred. (Id. at 13-14.) Thus, according to Defendant, the provision of water for fire suppression represents the relevant activity. (Id. at 14.)

Plaintiffs disagree with Defendant and argue that the repair of the water main represents the relevant activity. (Docket Entry 35 at 6.) Plaintiffs note that Defendant's arguments center on the end result - the fire and the lack of water to put out the fire - instead of the cause - in their view, the negligent repairs to the water main. (Id.) Plaintiffs further point out that Defendant's employees closed the water valve on the fire suppression line while repairing the water main. (Id. at 7.) Thus, according to Plaintiffs, the repair of the water main constitutes the relevant activity. (Id.)

The undersigned finds Defendant's arguments persuasive. Plaintiffs' negligence claim exists because Defendant failed to provide water for the Building's fire suppression sprinklers - a result of the closed water valve on the fire suppression line (Docket Entry 35-13 at 7-8). Although Defendant failed to re-open

8

the water valve after repairing the water main, the repair of the water main itself did not prevent water from flowing through the fire suppression line, which would present a different situation, see Bowling, 267 N.C. at 557-58, 148 S.E.2d at 628 ("There is no distinction, in this respect, between negligence, or other wrongful act, by the city in the construction or maintenance of the reservoir in which the water is impounded and like acts or omissions in the construction or maintenance of the system of mains and pipes by which the water is distributed to the consumers, both the reservoir and the distribution system being part of the water plant owned and maintained for the same commercial or proprietary purpose. It is also immaterial that one purpose of the reservoir or the water main is to supply water for fire protection or for washing the streets." (internal citations omitted)).

Moreover, the North Carolina Supreme Court previously rejected an argument similar to Plaintiffs'. In Mabe v. City of Winston-Salem, 190 N.C. 486, 130 S.E. 169, (1925), the plaintiff's house spontaneously caught fire. Id. at 486, 130 S.E. at 169. When the fire department arrived to put out the fire, they discovered several rocks blocking the fire hydrant. Id. Employees of the defendant-city had previously placed the rocks by the hydrant while paving a street and had not moved them. Id. The firefighters had to move the rocks in order to access the fire hydrant, but in that time the fire grew and destroyed the house. Id. The plaintiff

9

sued the defendant-city on the theory that its employees
negligently placed the rocks thereby blocking the fire hydrant.
Id. at 490, 130 S.E. at 171.  The court explicitly rejected this
argument and stated that "the proximate cause of [the] plaintiff's
loss was the failure of the fire department of the defendant city
to put out the fire . . . ."  Id. at 489, 130 S.E. at 171.

Like in Mabe, Plaintiffs suffered losses as a result of a city
employee's disruption of the water supply for fire prevention.
Thus, the Court should, as in Mabe, find that the failure to
provide water for fire suppression itself constitutes the relevant
activity and not the circumstances of the disruption.  Accordingly,
the failure to provide water for fire suppression constitutes the
relevant activity for evaluating governmental immunity, and,
because Defendant's negligence concerned the failure to provide
water for fire suppression services, Defendant "act[ed] in a
governmental capacity, and cannot be held liable for negligence,"
Faw, 253 N.C. at 409-10, 117 S.E.2d at 17 (internal citations
omitted).

To the extent that Estate of Williams overrules or supplants
the North Carolina Supreme Court's earlier decisions on
governmental immunity, application of Estate of Williams mandates
the same result.  As an initial matter, again, the provision of
water for fire suppression constitutes the "governmental act or
service that was allegedly done in a negligent manner," Bynum, 367

10

N.C. at 359, 758 S.E.2d at 646, for the reasons stated above. Under the first step of Estate of Williams, the North Carolina legislature has not clearly identified supplying water for fire suppression as a governmental activity.

Defendant argues that North Carolina General Statute § 160A-193 statutorily mandates that Defendant provide water for fire suppression services. (Docket Entry 34 at 9.) The statute, in part, provides: "A city shall have authority to summarily remove, abate, or remedy everything in the city limits, or within one mile thereof, that is dangerous or prejudicial to the public health or public safety." N.C. Gen. Stat. § 160A-193. However, the North Carolina Supreme Court has rejected a claim for governmental immunity where the statute did not specifically mention the activity in question. Estate of Williams, 366 N.C. at 201, 732 S.E.2d at 142. In Estate of Williams, an individual drowned in the "Swimming Hole" an area at the Fun Junktion park owned by the defendant-county. Id. at 196, 732 S.E.2d at 139. The defendant-county argued that North Carolina General Statute § 160A-351, which provides that the operation of parks qualify as a proper governmental function, definitively addressed the issue. Id. at 201, 732 S.E.2d at 142. The court rejected the argument and stated "even if the operation of a parks and recreation program is a governmental function by statute, the question remains whether the specific operation of the Swimming Hole component of Fun Junktion,

11

in this case and under these circumstances, is a governmental function." Id. In essence, the court required a more specific designation by the legislature in order to bestow governmental immunity. Accordingly, here, the statute does not specifically identify the provision of water for fire suppression services as a governmental activity.

Defendant additionally argues that North Carolina General Statute Sections 160A-411 and 412 also confirm that providing water for fire suppression constitutes a governmental activity. (Docket Entry 34 at 9-10.) Sections 160A-411 and 412 relate to building inspectors and their duties to enforce "State and local laws relating to [] [t]he construction of buildings and other structures . . . ." Defendant argues that "State and local laws" include the North Carolina Fire Code and the North Carolina Building Code, which contains provisions dealing with fire protection systems and their water sources. (Docket Entry 34 at 9.) Defendant suggests that, in Bynum, the Supreme Court upheld a finding of governmental immunity for a county based on similar statutes, Sections 153A-351 and 352. (Docket Entry 34 at 9-10.) However, in Bynum, the plaintiff argued that the defendant-county negligently failed to maintain the county office building. Bynum, 367 N.C. at 356, 758 S.E.2d at 644. The court concluded that the defendant-county's maintenance of the building constituted a governmental act, and, in doing so, cited and quoted North Carolina General Statute Section

12

153A-169.  Id. at 360, 758 S.E.2d at 647 (citing N.C. Gen. Stat. § 153A-169 ("The board of commissioners shall supervise the maintenance, repair, and use of all county property.")).  The court then added a "see also" citation to Sections 153A-351 and 352.  Id. Thus, the court did not rely entirely on Sections 153A-351 and 352, as Defendant appears to suggest, and the undersigned finds that Sections 160A-411 and 412 do not sufficiently address providing water for fire suppression service.  Accordingly, the analysis must proceed to the second step.

Under, the second step of Estate of Williams, both private companies and governmental entities can provide water for fire suppression.  Compare Gorrell v. Greensboro Water-Supply Co., 124 N.C. 328, 32 S.E. 720 (1899) (discussing water provided by a private company), with Mack v. Charlotte City Waterworks, 181 N.C. 383, 107 S.E. 244 (1921) (referencing water provided by the city). Accordingly, the analysis must proceed to the third step.

Under the third step, the factors require a finding that Defendant's provision of water for fire suppression constitutes a governmental activity.  The first factor, whether governmental entities or private companies have traditionally provided the service does not benefit either side.  Compare Gorrell, 124 N.C. 328, 32 S.E. 720 (discussing water provided by a private company), with Mack, 181 N.C. 383, 107 S.E. 244 (referencing water provided by the city).  However, the second factor clearly favors

13

governmental immunity.  The water provided to the fire suppression line operates separately from the domestic water line.  (Docket Entry 16-2, ¶¶ 4-6.)  Unlike the domestic line, Defendant does not meter, or charge, for water used from the fire suppression line. (Id., ¶¶ 5-6.)  Moreover, Defendant did not charge a connection fee when installing this line.  (Id., ¶ 6.)  The lack of a fee demonstrates that governmental immunity covers the provision of water for fire suppression services.[2]  By providing this free service, Defendant does not act in a proprietary manner. Accordingly, governmental immunity shields Defendant.

### CONCLUSION

Defendant has shown entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 33) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 7, 2015

---

[2] Of course, because Defendant does not charge a fee, the fee cannot cover more than the operating costs.  Thus the third factor does not apply.

14